IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| CHARLES POTTER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 06-6088-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| MICHAEL WASHINGTON, a Member the Chairperson of the Oregon Board of Parole and Post-Prison Supervision, In his Official and Personal Capacity, | ) ) ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Charles A. Potter
SID #6575288
OSCI-3405 Deer Park Dr. SE
Salem, Oregon 97310

    Pro Se Plaintiff

Page 1 - OPINION AND ORDER

Hardy Myers
Attorney General
Leonard W. Williamson
Senior Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon  97301-4096

    Attorneys for Defendant

KING, Judge:

Plaintiff Charles Potter is incarcerated at Oregon State Correctional Institution.  He brings a civil rights suit under § 1983 alleging that defendant Michael Washington, then chair of the Oregon Board of Parole and Post-Prison Supervision ("Parole Board" or "Board"), violated Potter's rights under the Ex Post Facto Clause and the Equal Protection Clause in determining his parole eligibility date.  Before the court are Potter's Motion for Partial Summary Judgment (#20) and Defendant's Motion for Summary Judgment (#44).  For the reasons below, I grant defendant's motion and dismiss all claims.

## FACTS

On November 2, 1984, Potter was convicted of one count of aggravated murder, one count of murder, and one count of criminal conspiracy in Multnomah County Circuit Court.  He was sentenced to life in prison, with a 30-year minimum before he becomes eligible for work release or parole.

On April 25, 1985, and again on May 16, 1985, the Board held hearings, sustained the 30-year minimum, and set Potter's parole release date to March 29, 2014, a date 30 years into his life sentence.  The Board also made findings of Potter's history/risk score (9 points), offense

severity rating (category 7, subcategory 1), and matrix range (120-168 months). This decision, and subsequent Board decisions, are documented with Board Action Forms.

On March 14, 1990, the Board reviewed Potter's file. On the advice of the Attorney General's office, the Board determined that it did not have the authority to set a parole release date for prisoners such as Potter, who were convicted of aggravated murder, until it determined that the inmate was likely to be rehabilitated within a reasonable period of time. The Board noted that the finding could not be made until the prisoner petitions for a hearing 15 or 20 years after the imposition of the 20 or 30-year minimum period of confinement.[1] As a result of the advice, the Board withdrew Potter's parole release date of March 29, 2014 and set that date as a review date.

On June 14, 1996, the Board issued a Board Action Form stating: "This Board Action Form corrects Board Action Forms dated 05/23/1985; 09/28/1989 and 03/14/1990 in which a crime severity rating and matrix range are noted. Aggravated murder is an unclassified felony; therefore, there is no crime severity rating or matrix range." Washington Aff. Att. 6 at 2.

On May 18, 2004, the Board held a hearing and found that Potter was likely to be rehabilitated within a reasonable period of time. It changed Potter's sentence from life imprisonment to life imprisonment with a possibility of parole by converting "the review date to a projected parole release date of 03/29/2014 following 360 months." Id. Att. 7 at 3. The Board also scheduled an exit hearing in September 2013 to review a current psychological evaluation.

---

[1] The minimum sentences and hearing dates vary by the type of aggravated murder but the two statutory schemes are otherwise identical.

Page 3 - OPINION AND ORDER

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. Universal Health Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

## DISCUSSION

I.   Habeas or Civil Rights Action

Potter brings his claims of constitutional violations in a civil rights action under 42 U.S.C. § 1983. Defendant contends that Potter must bring his claim in the form of a habeas petition because he is challenging the fact or duration of his confinement. Defendant notes that Potter, who was sentenced over 22 years ago, contends that the Board should have applied a parole matrix range of 120 to 168 months to his sentence, rather than the 360 months imposed by the sentencing court. Thus, defendant contends that Potter's argument, if it prevails, would necessarily cause his immediate release or, at a minimum, shorten the current term of confinement. Defendant contends that Wilkinson v. Dotson, 544 U.S. 74, 125 S. Ct. 1242 (2005), does not apply because Potter does not attack the procedures used by the Board but rather attacks the substance of its decision. According to defendant, if Potter prevails, he would not be

entitled to additional process during which the Board could use its discretion. Instead, defendant claims the Board would have no choice but to reduce the length of Potter's confinement.

Potter argues that his claims are actionable under § 1983 because Wilkinson applies. According to Potter, the relief he seeks is for defendant to apply the proper procedures and rules in establishing his parole release date. Potter acknowledges that in applying the proper procedures, the Board could set a parole release date that is within the 120 to 168 month parole matrix range, and thus free him. He also argues, however, that the Board could set a parole release date that is later than that range if the Board makes findings of aggravation under OAR 255-035-025(1). Potter contends that even after his parole release date is reached under the parole matrix system, the Board retains significant authority to defer the release date under ORS 144.125.

In Wilkinson, the Court considered cases from two men, Dotson and Johnson, who were serving terms in Ohio prisons. A parole officer determined that Dotson should not receive further consideration for parole for at least five more years. The officer based his decision on parole guidelines adopted after Dotson began to serve his term. Dotson claimed the new, harsher guidelines violated the Ex Post Facto and Due Process Clauses. He sought an injunction requiring an immediate parole hearing in accordance with the laws and rules in place when he committed his crimes. Wilkinson, 125 S. Ct. at 1245.

Johnson's first parole request was rejected by the parole board, also after applying the newer guidelines which likewise were adopted after Johnson committed his crime. Johnson alleged Ex Post Facto and Due Process Clause violations and sought a new parole hearing conducted under constitutionally proper procedures. Id.

Page 5 - OPINION AND ORDER

The Court reviewed its prior cases, stating:

> These cases [Preiser, Wolff, Heck, and Edwards], taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation)–no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)–*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.
>
> Applying these principles to the present case, we conclude that respondents' claims are cognizable under § 1983, *i.e.*, they do not fall within the implicit habeas exception. Dotson and Johnson seek relief that will render invalid the state procedures used to deny parole eligibility (Dotson) and parole suitability (Johnson). Neither respondent seeks an injunction ordering his immediate or speedier release into the community. And as in Wolff, a favorable judgment will not "necessarily imply the invalidity of [their] conviction[s] or sentences[s]." Success for Dotson does not mean immediate release from confinement or a shorter stay in prison; it means at most new eligibility review, which at most will speed *consideration* of a new parole application. Success for Johnson means at most a new parole hearing at which Ohio parole authorities may, in their discretion, decline to shorten his prison term. Because neither prisoner's claim would necessarily spell speedier release, neither lies at "the core of habeas corpus." Finally, the prisoners' claims for *future* relief (which, if successful, will not necessarily imply the invalidity of confinement or shorten its duration) are yet more distant from that core.

Id. at 1248 (internal citations omitted).

Several district courts have applied the distinctions made in Wilkinson. See Muraco v. Sandy, No. CV04-606-C-EJL, 2007 WL 1381795 (D. Idaho Mar. 12, 2007) (upcoming parole revoked because defendant could not be deported; Wilkinson bars claim if it is construed as requesting release on parole but does not bar claim if it is construed as requesting a new hearing under the rule that national origin cannot be considered); Jeffery v. Owens, 216 Fed. App'x. 396 (5th Cir. 2006) (Wilkinson barred claim that parole was denied because the parole board wrongly considered expunged arrests; prisoner alleged wrongful specific procedures and did not make a general challenge to parole procedures); Consiglio v. Hickman, No. CIV S-05-2386 DFL DAD P,

Page 6 - OPINION AND ORDER

2006 WL 3251796 (E.D. Cal. Nov. 8, 2006) (Wilkinson did not bar claim that parole board was using parole terms to illegally lengthen sentences past statutory maximums; success would not invalidate the current confinement); Swimp v. Rubitschun, No. 1:06-CV-592, 2006 WL 3370876 (W.D. Mich. Nov. 20, 2006) (Wilkinson barred claim that parole was denied for inaccurate and irrelevant reasons; defendant sought monetary damages which implied an erroneous parole decision); Hann v. Michigan, No. 05-CV-71347-PDB-PJK, 2006 WL 2524207 (E.D. Mich. Aug. 30, 2006) (Wilkinson barred claim that parole was denied after a hearing that suffered from due process violations; prisoner sought a parole board interview that was compliant with the procedures and did not seek to invalidate the procedures).

Here, Potter alleges Ex Post Facto and Equal Protection claims. He seeks a parole hearing based on the rules in effect at the time of his crime, alleging that the rules were changed over the years. As Potter notes, his success could result in parole immediately after the requested hearing or the Board could find that there are aggravating factors and move his parole release date past 30 years. Thus, Potter's success does not necessarily demonstrate the invalidity of the duration of his confinement. Accordingly, Wilkinson does not bar his § 1983 claims.

II.  Immunity

Defendant seeks to dismiss Potter's claims because he contends that as a Parole Board member, he is entitled to absolute immunity and/or quasi-judicial immunity.

It is true that a member of a parole board is "entitled to absolute quasi-judicial immunity for decisions to grant, deny, or revoke parole because these tasks are functionally comparable to tasks performed by judges." Swift v. California, 384 F.3d 1184, 1189 (9th Cir. 2004). Judicial immunity protects from damages but does not cover prospective injunctive relief. Ashelman v.

Pope, 793 F.2d 1072, 1075 (9th Cir. 1986). Since Potter only seeks declarative and injunctive relief, immunity is not a valid reason to dismiss his claims.

III.    Statute of Limitations

Defendant claims that Potter's Complaint, filed in April 2006, is untimely. Defendant contends that the limitations period began to run on May 6, 1985, when the Board applied the 30-year judicially imposed minimum sentence. Alternatively, defendant contends that the limitations period began to run on June 14, 1996, when it informed Potter that the matrix system did not apply to inmates convicted of aggravated murder.

Potter argues that the limitations period began to run on May 18, 2004, the date the Board established his parole release date as March 29, 2014. Until that date, Potter claims he did not know the Board determined the date by applying a new policy that violated the Ex Post Facto and Equal Protection Clauses.

The parties agree that this § 1983 action borrows a two-year statute of limitations, which I note is from the state's general personal injury limitations statute, ORS 12.110(1). Sain v. City of Bend, 309 F.3d 1134, 1139 (9th Cir. 2002).

Under the statute, a person convicted of aggravated murder cannot have their prison term changed to life imprisonment with the possibility of parole until he is found to be capable of rehabilitation. This determination is made at a hearing that cannot take place until after 20 years from the date of imposition of sentence of a minimum period of confinement of 30 years without possibility of parole. ORS 163.105(1), (3), (4). At the hearing on May 18, 2004, Potter was found to be likely of rehabilitation within a reasonable period of time. The Board then converted Potter's parole release date to 360 months instead of to a date within the parole matrix. This

Page 8 - OPINION AND ORDER

conversion is when Potter's claim arose. He filed this action within two years of May 18, 2004 and is not barred by the statute of limitations.

IV.     Ex Post Facto Violation

Potter contends that the Board's policy and practice of setting his parole release date at the end of his 30-year minimum sentence is not allowed by the statute and related administrative rules in effect at the time he committed his crime. He argues that the conversion of the terms of his confinement to life imprisonment with the possibility of parole struck the 30-year minimum confinement term. Potter claims that if the Board set his parole release date in accordance with the appropriate rules, his matrix range would be 120 to 168 months and his release date would be within the range unless postponed for aggravating factors. Thus, he argues the policy violates the Ex Post Facto Clause because it subjects him to more severe punishment by delaying his parole consideration.

Defendant contends that the Board did not use a new rule or policy in making the determinations concerning Potter's parole. According to defendant, the Board cannot shorten the minimum sentence of 30 years without possibility of parole, as required by ORS 163.105 at the time Potter committed the aggravated murder. Defendant argues that the matrix system is only used for non-aggravated murders and does not apply to Potter.

The relevant laws and administrative rules in effect when Potter committed his crime in 1984 state as follows:

> (1) When a defendant is convicted of murder defined as aggravated murder pursuant to ORS 163.095(1), the court shall order that the defendant shall be confined for a minimum of 30 years without possibility of parole, release on work release or any form of temporary leave or employment at a forest or work camp.

Page 9 - OPINION AND ORDER

>    (2) [20-year minimum for forms of aggravated murder that do not apply to Potter]
>
>    (3) At any time after 20 years from the date of imposition of a minimum period of confinement pursuant to subsection (1) of this section, or at any time after 15 years from the date of imposition of a minimum period of confinement pursuant to subsection (2) of this section, the State Board of Parole, upon the petition of a prisoner so confined, shall hold a hearing to determine if the prisoner is likely to be rehabilitated within a reasonable period of time. The sole issue shall be whether or not the prisoner is likely to be rehabilitated within a reasonable period of time. The proceeding shall be conducted in the manner prescribed for a contested case hearing under ORS 183.310 to 183.550 except that:
>
>    (a) [burden of proof]
>
>    (b) [right to counsel]
>
>    (4) If, upon hearing all the evidence, the board finds that the prisoner is capable of rehabilitation and that the terms of the prisoner's confinement should be changed to life imprisonment with the possibility of parole, or work release, it shall enter an order to that effect and the order shall convert the terms of the prisoner's confinement to life imprisonment with the possibility of parole or work release. Otherwise, the board shall deny the relief sought in the petition.

ORS 163.105(1)-(4).

Potter relies on Norris v. Board of Parole, 331 Or. 194, 13 P.3d 104 (2000), cert. denied, 534 U.S. 1028 (2001), in which the court analyzes the Board's action concerning Norris, on whom the trial court imposed two consecutive sentences of life without possibility of parole for 20 years. In a hearing conducted under ORS 163.095(2) after Norris served 15 years, the Board found that he could be rehabilitated within a reasonable period of time. The court reversed the Board's decision not to lower the 40 year minimum sentence (composed of two consecutive 20-year minimum sentences):

>    If, at such a rehabilitation hearing, the prisoner proves by a preponderance of the evidence that the prisoner is likely to be rehabilitated within a reasonable period

Page 10 - OPINION AND ORDER

of time, then the Board must change the "terms of . . . confinement"–that is, the sentence imposed under ORS 163.105(2) (1977) for one aggravated murder–to life with the possibility of parole or work release.

> Applying that analysis to this case, we conclude that the Board must change the first of petitioner's life sentences to life with the possibility of parole or work release. Petitioner is entitled to have that change occur retroactively to January 26, 1994, the date that the Board found him to be capable of rehabilitation. On that date, petitioner began serving his second life sentence with a 20-year minimum term of confinement for his second conviction of aggravated murder. In 2009, 15 years from the date that he began serving that 20-year minimum term, petitioner may petition for a rehabilitation hearing, and that hearing also will be governed by ORS 163.105(3), (4), and (5) (1977). Only if the Board again finds that petitioner is capable of rehabilitation within a reasonable period of time, must the Board change petitioner's second aggravated murder sentence to life with the possibility of parole and work release. Only at that point would petitioner become eligible for parole.

Id. at 207-08. The court expressed no opinion on the applicability of the matrix to the case. Potter contends that the Norris holding is only logically possible if the Board is authorized to override the initial minimum term.

Norris was interpreted in Roy v. Palmateer, 339 Or. 533, 124 P.3d 603 (2005), in which the court held that a Board finding that an inmate was capable of rehabilitation did not entitle him to immediate release on parole. Id. at 543. The inmate was convicted of one count of aggravated murder, sentenced to life imprisonment without possibility of parole, and could petition for a rehabilitation hearing after serving 20 years. Id. at 535. Roy did not address the precise issue before me:

> The state asks us to hold that, notwithstanding a board finding that an inmate is likely to be rehabilitated within a reasonable period of time, the board never can reduce the inmate's sentence below the 20-year minimum. Conversely, plaintiff asks us to hold that a board "rehabilitation finding shortens the twenty-year minimum term that initially applies to life sentences in such cases to fifteen years[.]" We do not find it necessary to reach that issue in this case because plaintiff already has served more than the 20-year minimum sentence.

Page 11 - OPINION AND ORDER

Id. at 541 n.6.  The court continued:

> This court further observed in Norris that the sentence would be converted to one of life imprisonment with merely the *possibility* of parole or work release. Nothing in the statute or the opinion in Norris supports the view that the "possibility" of release is the same as a requirement of "immediate" release.
>
> The court in Norris did not determine Norris's *release date* or hold that he was eligible for parole.  Instead, his release date would depend on a finding of likely rehabilitation with respect to his *second* sentence.  More importantly, Norris did not purport to establish any rule that a finding of likely rehabilitation required immediate release.

Id. at 543 (citations omitted).

I do not interpret Norris to support the conclusion that a Board finding that an inmate is likely to be rehabilitated within a reasonable period of time shortens the minimum period of incarceration to the date of the finding.  That conclusion would stretch well past the primary holding in Norris that the Board only makes the single finding on the likelihood of rehabilitation at the hearing and does not make a second finding that the terms of the prisoner's confinement should be changed to life imprisonment with the possibility of parole.  Norris, 331 Or. at 207.  Accordingly, the Board properly applied the 1984 version of the statute when it did not strike the 30-year minimum term.  I grant summary judgment against the Ex Post Facto claim.

V.      Equal Protection Violation

Potter provides no evidence that any prisoner convicted of aggravated murder received a sentence under the matrix system rather than being required to serve the mandatory minimum sentence.  Although he has not received requested discovery on this issue, Potter does not even refer to any inmates he has known in this situation during his 23 year confinement.  In his argument on the merits, Potter compares his situation to prisoners convicted of multiple counts of

aggravated murder, as opposed to his single count. Those prisoners are not in similar circumstances to him, as noted in the Roy analysis. I grant summary judgment against the Equal Protection claim.

## CONCLUSION

Potter's Motion for Partial Summary Judgment (#20) is denied. Defendant's Motion for Summary Judgment (#44) is granted. This action is dismissed with prejudice.

IT IS SO ORDERED.

Dated this   10th   day of September, 2007.

                    /s/ Garr M. King
                    Garr M. King
                    United States District Judge